KESSENICK GAMMA & FREE, LLP
MICHAEL A. GAWLEY (State Bar No. 294190)
mgawley@kgf-lawfirm.com
JAMES MAXWELL COOPER (State Bar No. 284054)
mcooper@kgf-lawfirm.com
SYDNEY A. WARD (State Bar No. 312615)
sward@kgf-lawfirm.com
1 Post Street, Suite 2500
San Francisco, California 94104
Telephone: 415.362.9400
Facsimile: 415.362.9401

Attorneys for Plaintiffs
SAMIR SAIRAM, M.D.,
SAMIR SAIRAM, M.D., INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Samir Sairam, M.D., an individual; Samir Sairam, M.D., Inc., a California professional corporation,<br><br>Plaintiffs,<br><br>vs.<br><br>Mercy Retirement and Care Center, a California corporation; Tamra Marie Tsanos, an individual.<br><br>Defendants. | Case No. 3:21-cv-04335-EMC<br><br>**PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS COMPLAINT AS TO DEFENDANT TAMRA MARIE TSANOS**<br><br>Date: August 26, 2021<br>Time: 1:30 P.M.<br>Dept.: Courtroom 5<br>Judge: The Hon. Edward M. Chen,<br>Courtroom 5, 450 Golden Gate Avenue, San Francisco, CA 94102 |

# TABLE OF CONTENTS

I. INTRODUCTION ............................................................................................................. 5

II. BACKGROUND ............................................................................................................... 5

    A. Allegations in FAC ............................................................................................... 5

    B. Procedural History ................................................................................................ 7

III. ARGUMENT .................................................................................................................... 7

    A. Ms. Tsanos Is Not Immune From Personal Liability ........................................... 8

        1. Plaintiffs Plausibly Allege That Ms. Tsanos Participated in the Misconduct Described in the FAC. ....................................... 8

        2. Ms. Tsanos Overstates the Law on Liability Protections for Corporate Agents and Overlooks Plaintiffs' Allegations Against Her............................................................................................ 10

    B. Plaintiffs Allege a Civil RICO Claim Against Ms. Tsanos................................. 12

        1. Plaintiffs Satisfy RICO's Liberal Pleading Requirements ...................... 12

        2. RICO Applies to Non-Profit Companies and Individuals....................... 14

        3. Plaintiffs Have Alleged a Plausible Conspiracy or Pattern of Racketeering Activity................................................................................ 15

    C. If This Court Grants Ms. Tsanos's Motion, It Should Give Leave to Amend ................................................................................................................. 18

IV. CONCLUSION ............................................................................................................... 19

# TABLE OF AUTHORITIES

**Cases**

*AndersonNews, L.L.C. v. Am. Medica, Inc.*
  680 F.3d 162 (2d Cir. 2012) ................................................................................................. 18

*Asahi Kasei Pharma Corp. v. Actelion Ltd.*
  222 Cal. App. 4th 945 (2013) ............................................................................................... 11

*Braden v. Wal-Mart Stores, Inc.*
  588 F.3d 585 (8th Cir. 2009) ................................................................................................ 17

*Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*
  173 F.3d 725 (9th Cir. 1999) ................................................................................................ 10

*Corley v. Rosewood Care Ctr., Inc.*
  142 F.3d 1041 (7th Cir. 1998) ................................................................................. 13, 15, 17

*Dobeck v. Cobra Eng'g, Inc.*
  No. SACV161570JVSFFMX, 2017 WL 5495152 (C.D. Cal. Feb. 27, 2017) ....................... 7

*Flores v. Emerich & Fike*
  No. 1:05-CV-0291-AWI-DLB, 2008 WL 2489900 (E.D. Cal. June 18, 2008) .................... 8

*Frances T. v. Vill. Green Owners Ass'n*
  42 Cal.3d 490 (1986) ...................................................................................................... 9, 10

*H.J. Inc. v. Nw. Bell Tel. Co.*
  492 U.S. 229 (1989) ............................................................................................... 14, 16, 17

*Ikuno v. Yip*
  912 F.2d 306 (9th Cir. 1990) ............................................................................................... 17

*Ixchel Pharma, LLC v. Biogen, Inc.*
  9 Cal. 5th 1130 (2020) ......................................................................................................... 11

*Lopez v. Smith*
  203 F.3d 1122 (9th Cir. 2000) ............................................................................................. 18

*Miklosy v. Regents of Univ. of California*
  44 Cal. 4th 876 (2008) ......................................................................................................... 12

*O'Connor v. Uber Techs., Inc.*
  No. C-13-3826 EMC, 2013 WL 6354534 (N.D. Cal. Dec. 5, 2013) .................................... 8

*Olenicoff v. UBS AG*
  No. SACV081029AGRNBX, 2009 WL 10687550 (C.D. Cal. July 31, 2009) ..................... 9

*Pacheco v. Golden Living Ctr.-Summit*
  No. 3:10CV1641, 2011 WL 744656 (M.D. Pa. Feb. 23, 2011) ............................... 11, 13, 15

*PMC, Inc. v. Kadisha*
  78 Cal. App. 4th 1368 (2000) .............................................................................................. 11

*Pro-Com Prod., Inc. v. Kings Express LA, Inc.*
  No. CV 18-6035-DMG (SKX), 2019 WL 1771652 (C.D. Cal. Feb. 21, 2019) ................... 13

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS FAC BY DEFENDANT TSANOS
CASE NO: 3:21-cv-04335-EMC

## TABLE OF AUTHORITIES (CONT.)

**Cases (cont.)**

*Schmuck v. United States*
    489 U.S. 705 (1989) ...................................................................................................15

*Sedima, S.P.R.L. v. Imrex Co.*
    473 U.S. 479 (1985) ............................................................................................13, 14

*Shafer v. Berger, Kahn, Shafton, Moss, Figler, Simon & Gladstone*
    107 Cal. App. 4th 54 (2003) .......................................................................................10

*Standard Oil Co. of Cal. v. Moore*
    251 F.2d 188 (9th Cir. 1957) ......................................................................................17

*Stitt v. Citibank, N.A.*
    942 F. Supp. 2d 944 (N.D. Cal. 2013) ..................................................................16, 18

*Sun Sav. & Loan Ass'n v. Dierdorff*
    825 F.2d 187 (9th Cir. 1987) ......................................................................................17

*United States Liab. Ins. Co. v. Haidinger-Hayes, Inc.*
    1 Cal.3d 586 (1970) ...............................................................................................8, 10

*United States v. Grovo*
    826 F.3d 1207 (9th Cir. 2016) ....................................................................................17

*Wolf Designs, Inc. v. DHR Co.*
    322 F. Supp. 2d 1065 (C.D. Cal. 2004) .................................................................9, 11

*Wyatt v. Union Mortg. Co.*
    24 Cal. 3d 773 (1979) ....................................................................................8, 10, 17

**Statutes**

18 U.S.C. § 1341 .................................................................................................................15

18 U.S.C. § 1961 .................................................................................................................15

18 U.S.C. § 1964 .................................................................................................................12

California Business & Professions Code § 2056 ....................................................7, 11, 12

California Business & Professions Code § 510 .....................................................7, 11, 12

**Rules**

Federal Rule of Civil Procedure 15(a)(3) .............................................................................7

## I. INTRODUCTION

Defendant Tamra Marie Tsanos, Executive Director of defendant Mercy Retirement and Care Center ("Mercy") was the primary actor in the retaliatory and tortious scheme to disrupt Dr. Sairam's patient-physician relationships and his medical practice. Dr. Sairam complained about Mercy's unlawful and unsafe medical practices directly to Ms. Tsanos. In turn, she wrote and signed letters to Dr. Sairam's patients, misrepresenting his ability to treat them as their attending physician and encouraging them to switch doctors, driving a wedge between Dr. Sairam and his current patients. Ms. Tsanos also wrote and sent a letter to Dr. Sairam that terminated his administrative position as Mercy's Medical Director, handcuffing his ability to generate patient-physician relationships with Mercy residents in the future. What's more, the wrongful acts towards Dr. Sairam and his practice were part and parcel of Mercy's and Ms. Tsanos' ongoing effort to prioritize profit over patient safety, leading to violations of federal mail fraud and wire fraud statutes. These facts state plausible claims for tortious interference, violations of anti-retaliation statutes, and a civil RICO violation against Ms. Tsanos.

Ms. Tsanos now seeks to dismiss the claims asserted against her, arguing that the law immunizes corporate agents from liability. But that isn't the law. Even the cases Ms. Tsanos cites hold that an agent is liable for their own tortious conduct. Ms. Tsanos's motion overlooks the detailed allegations of her participation in, and knowledge of, the retaliatory and tortious scheme against Dr. Sairam and his practice. She also ignores allegations of Mercy's years-long pattern of maximizing profits at the expense of patients, made possible by misrepresentations to patients by mail and to the federal government by electronic submissions. When read as a whole, Plaintiffs' allegations state plausible claims against Ms. Tsanos.

Plaintiffs ask that this Court deny Ms. Tsanos's motion. If this Court grants the motion, in whole or in part, Plaintiffs ask for leave to amend.

## II. BACKGROUND

### A. Allegations in FAC

Plaintiff Samir Sairam, M.D. ("Dr. Sairam") is a physician licensed to practice in California, specializing in geriatric medicine. ECF No. 5 ¶ 2. He practices medicine through his

professional corporation, Plaintiff Samir Sairam, M.D., Inc. *Id.* ¶ 3.  In 2017, defendant Mercy engaged him to serve as the Medical Director for its skilled nursing facility. *Id.* ¶¶ 4, 8.  During his time as Mercy's Medical Director, he also served as attending physician for numerous patients at Mercy.[1]  Dr. Sairam identified improper billing and medical practices that compromised patient care and regulatory compliance in service of profit-maximization and administrative expediency. *Id.* ¶¶ 20-22 (providing examples).  Dr. Sairam took reasonable steps as Medical Director to remedy these problems, including by reporting them to Mercy, developing appropriate protocols, and addressing compliance issues with individual physicians. *Id.*  Mercy's administrators rebuffed Dr. Sairam's efforts. *Id.* ¶ 12.

As relevant here, Dr. Sairam complained directly to Defendant Tamra Marie Tsanos, Mercy's Executive Director, about Mercy's unlawful reversal of a patient's DNR order. ECF No. 5 ¶¶ 12-17.  In response, Mercy terminated Dr. Sairam's medical directorship agreement as retaliation for his advocacy for medically appropriate health care.  *See id.* ¶¶ 17-18, 51, 56.  Ms. Tsanos signed the letter terminating Dr. Sairam's agreement. *Id.* ¶ 18.  Ms. Tsanos then sent letters to Dr. Sairam's patients and their authorized representatives to create the misleading impression that Dr. Sairam would no longer serve as their attending physician. *Id.* ¶ 25.  Ms. Tsanos' letter did, in fact, mislead some patients, causing several of them to leave Dr. Sairam's care. *Id.*

Mercy and Ms. Tsanos have confirmed that their plan was to transfer all of Dr. Sairam's patients to other providers. ECF No. 5 ¶¶ 26-27.  They have doubled-down on this plan by threatening to bar Dr. Sairam from the premises for pretextual reasons (*Id.* ¶ 28), by sending letters to his patients proposing that they transfer their care to other providers (*Id.* ¶ 29), by refusing to provide patients or their representatives with his contact information and informing them that he cannot

---

[1] Skilled nursing facilities like Mercy have both a Medical Director and attending physicians. "While many medical directors also serve as attending physicians, the roles and functions of a medical director are separate from those of an attending physician." Centers for Medicare & Medicaid Services, CMS Manual System Pub. 100-07 State Operations Provider Certification Transmittal 15:  Medical Director Guidance at 2 (Nov. 28, 2005), https://www.cms.gov/Regulations-and-Guidance/Guidance/Transmittals/downloads/r15soma.pdf.  "The medical director's role involves the co-ordination of facility-wide medical care while the attending physician's role involves primary responsibility for the medical care of individual residents." *Id.*

be reached (*Id.* ¶ 30), and by adopting new policies that interfere with Dr. Sairam's ability to communicate with Mercy staff regarding patient care issues and that improperly empower the new medical director to choose a patient's attending physician.  *Id.* ¶¶ 33-34.

Mercy and Ms. Tsanos' conduct is unlawful retaliation in violation of Business and Professions Code Sections 510 and 2056.  ECF No. 5 ¶¶ 49-58.  Their conduct also unlawfully interfered with Plaintiffs' contracts and prospective economic advantage with residents.  *Id.* ¶¶ 35-48.  As for Ms. Tsanos' liability, she knew about Plaintiffs' contractual relationships with patients, and his prospective economic relationships, and that her conduct was intended to, was substantially likely to, and did interfere with those relationships.  *See id.* ¶¶ 31, 37-39, 44-47.  Ms. Tsanos terminated Dr. Sairam for his advocacy for appropriate medical care.  *See*, *e.g.*, *id.* ¶¶ 17-19, 51, 56.  In taking these actions, Ms. Tsanos and Mercy also violated the federal RICO statute, 18 U.S.C §§ 1962(c) and (d), by participating in—and conspiring to participate in—the conduct of an enterprise to maximize Mercy's profits by violating its obligations to Mercy's residents and physicians.  *Id.* ¶ 62.

### B.  Procedural History

On April 9, 2021, Plaintiffs filed this action in state court.  Both defendants—Ms. Tsanos and Mercy—answered the complaint in state court and then removed to this Court.  ECF No. 1 ¶ 6.  On June 28, 2021, pursuant to Federal Rule of Civil Procedure 15(a)(1)(B), Plaintiffs filed the FAC, alleging additional acts of retaliation by Defendants, but no new causes of action.  ECF No. 5.  Like the original complaint, the FAC brings five claims against Ms. Tsanos individually: intentional interference with contractual relations, intentional interference with prospective economic advantage, violation of California Business & Professions Code § 510, violation of California Business & Professions Code § 2056, and violation of the federal RICO statute.  *Id.*  On July 19, 2021, Ms. Tsanos moved to dismiss the FAC.[2]  ECF No. 8.

---

[2] Ms. Tsanos' motion is untimely.  Ms. Tsanos's deadline was July 12, 2021, which was fourteen days from the filing of the FAC.  Fed. R. Civ. P. 15(a)(3).  Some courts deny late motions to dismiss without reaching the merits, and order the filing of an answer instead.  *See*, *e.g.*, *Dobeck v. Cobra Eng'g, Inc.*, No. SACV161570JVSFFMX, 2017 WL 5495152, at *1 (C.D. Cal. Feb. 27, 2017) ("Because Dobeck has failed to follow the proper procedural requirements, the Court denies his motion and requires Dobeck to file his answer within fourteen days of this Court's order.").

Page 7

## III. ARGUMENT

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain a "short and plain statement of the claim[s] showing that the pleader is entitled to relief" that gives the defendant "fair notice" of what the claims are and the grounds on which they rest. *See* Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This notice pleading standard does not require detailed factual allegations; the complaint need only contain enough facts to state a claim that is "plausible on its face." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). If the court may draw a reasonable inference from the facts alleged that the defendant is liable for the misconduct alleged, the claim has "facial plausibility" and should not be dismissed. *Id.*

### C. Ms. Tsanos Is Not Immune From Personal Liability

#### 1. Plaintiffs Plausibly Allege That Ms. Tsanos Participated in the Misconduct Described in the FAC.

Ms. Tsanos seeks to dismiss all claims against her under the theory that she cannot be individually liable for interference torts, statutory claims, or civil RICO claims. But under California law, the corporate form does not insulate agents, like Ms. Tsanos, from ***all*** liability in their role with the corporation. For example, corporate agents are not personally liable for a corporation's wrong merely because of their position with the company. *O'Connor v. Uber Techs., Inc.,* No. C-13-3826 EMC, 2013 WL 6354534, at *18 (N.D. Cal. Dec. 5, 2013). But if corporate agents "participate in the wrong or authorize or direct that it be done"[3] or "concur[] in the tortious scheme with knowledge of its unlawful purpose,"[4] they are jointly liable with the corporation and may be named as defendants. Put another way, corporate agents "are liable for torts committed by them on the corporation's behalf." *Flores v. Emerich & Fike*, No. 1:05-CV-0291-AWI-DLB, 2008 WL 2489900, at *35 (E.D. Cal. June 18, 2008). This rule protects the special benefit of limited liability created by the corporate form while also acknowledging the commonsense notion that the corporate form "was never intended to insulate officers from liability for their own tortious conduct."

---

[3] *United States Liab. Ins. Co. v. Haidinger-Hayes, Inc.*, 1 Cal.3d 586, 595 (1970).

[4] *Wyatt v. Union Mortg. Co.*, 24 Cal. 3d 773, 784 (1979).

Page 8

*Frances T. v. Vill. Green Owners Ass'n*, 42 Cal.3d 490, 507-508 (1986) (footnote omitted).

Under this standard, the FAC plausibly alleges that Ms. Tsanos participated in tortious wrongs—or at the very least knew about them and authorized that they be done. Dr. Sairam reported his concerns related to Mercy's unlawful conduct directly to Ms. Tsanos. ECF No. 5 ¶ 17. Not only did Ms. Tsanos know about Dr. Sairam's advocacy for appropriate medical care, she also knew about Plaintiffs' current and prospective relationships with patients at Mercy. *Id.* ¶¶ 36-37, 44-45. Shortly after Dr. Sairam complained to Ms. Tsanos, she wrote and signed a letter to him that terminated his medical directorship. *Id.* ¶ 18. Dr. Sairam learned later that Ms. Tsanos also wrote and signed misleading letters to his patients, in an effort to oust him from the facility completely. *Id.* ¶ 25. The letter to Dr. Sairam's patients—which Ms. Tsanos sent without his knowledge or consent—stated that Dr. Sairam "will be leaving us as of March 3, 2021," and that Mercy "greatly appreciate[s] his physician services these past years" and "wish[es] Dr. Sairam well in his future endeavors." *Id.* Ms. Tsanos' letter introduces Dr. Sairam's patients to Mercy's new medical director, causing his patients to be misled into thinking that Dr. Sairam was no longer going to treat patients at Mercy, and their care would be assumed by the new medical director. *Id.*

These alleged facts show that Ms. Tsanos personally committed, or at least knew about and authorized, the acts at the core of Plaintiffs' claims. *Olenicoff v. UBS AG*, No. SACV-081029-AGR-NBX, 2009 WL 10687550, at *6 (C.D. Cal. July 31, 2009) (denying motion to dismiss individual corporate agent because plaintiff adequately pleaded personal participation in tortious scheme). Unlike a corporate executive removed from day-to-day operations, Ms. Tsanos spearheaded the tortious and retaliatory scheme to remove Dr. Sairam from Mercy. This means Plaintiffs have stated a claim against Ms. Tsanos. *Wolf Designs, Inc. v. DHR Co.*, 322 F. Supp. 2d 1065, 1072 (C.D. Cal. 2004) (stating that personal liability for corporate officers is appropriate "where the defendant was the 'guiding spirit' behind the wrongful conduct . . . or the 'central figure' in the challenged corporate activity") (citations omitted).

### 2.   Ms. Tsanos Overstates the Law on Liability Protections for Corporate Agents and Overlooks Plaintiffs' Allegations Against Her.

Ms. Tsanos's motion overstates the law on the protection of corporate agents. Though Ms. Tsanos argues that "it is clearly established that individuals in their official capacity are excluded from liability" (ECF No. 8 at 6), the corporate form does not immunize individuals from their tortious conduct. Ms. Tsanos cites no law providing a blanket immunity for corporate agents; each case she cites acknowledges that corporate agents can be personally liable when they participate in wrongful acts.[5] Ms. Tsanos' argument runs against well-establish law: "'[a] corporate officer or director is, in general, personally liable for all torts which he authorizes or directs or in which he participates, notwithstanding that he acted as an agent of the corporation and not on his own behalf.'" *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 734 (9th Cir. 1999) (citation omitted); *see also Shafer v. Berger, Kahn, Shafton, Moss, Figler, Simon & Gladstone*, 107 Cal. App. 4th 54, 68 (2003) ("'An agent or employee is always liable for his or her own torts, whether the employer is liable or not.'") (citation omitted). In short, Ms. Tsanos cannot "'hide behind the corporation where [she was] an actual participant in the tort.'" *Coastal Abstract Serv., Inc.*, 173 F.3d at 734 (citation omitted).

Ms. Tsanos's motion also misstates Plaintiffs' allegations. Ms. Tsanos argues that Plaintiffs' claims about her involvement are "conclusory" because all she did was "sign[] documents on behalf of the organization" and "mere knowledge of tortious conduct by the corporation is not enough" to impose liability on Ms. Tsanos. ECF No. 8 at 5. But Plaintiffs allege more than this. Dr. Sairam complained about Mercy's practices to Ms. Tsanos, and then Ms. Tsanos wrote two letters that carried out the tortious and retaliatory scheme against Plaintiffs. ECF No. 5 ¶¶ 18, 25. This plausibly alleges that she knew about Dr. Sairam's protected activity and authorized or directed actions in retaliation. Plaintiffs allege not only that Ms. Tsanos knew about wrongdoing,

---

[5] ECF No. 8 at 4-5 (quoting *United States Liab. Ins. Co. v. Haidinger-Hayes, Inc.*, 1 Cal. 3d 586 (1970) (holding that corporate agents "do not incur liability for torts of the corporation merely by reason of their official position, ***unless they participate in the wrong or authorize or direct that it be done***") (emphasis added); *Wyatt v. Union Mortgage Co.*, 24 Cal. 3d 773 (1979); *id.* (citing *Frances T. v. Village Green Owners Ass'n*, 42 Cal. 3d 490 (1986) (ruling that the complaint survived demurrer because it alleges that each of the directors participated in the tortious activity)).

but that she was the central figure driving the tortious and retaliatory action on Mercy's behalf—this makes both Mercy and Ms. Tsanos liable. *See Wolf Designs, Inc.*, 322 F. Supp. 2d at 1072 (denying motion to dismiss individual defendant for lack of personal jurisdiction where he was "the prime moving force in all policies and decisions of [the corporate defendant]," and was thereby a participant in alleged infringing activity directed to California).

Ms. Tsanos's motion raises several other, ancillary arguments, none of which warrant dismissing Plaintiffs' claims. *First*, she argues that the FAC does not adequately plead that she intended to cause Dr. Sairam harm (ECF No. 8 at 6), but Ms. Tsanos does not identify what cause of action requires Plaintiffs to plead that Ms. Tsanos intended to cause harm, or why the allegations in the FAC are insufficient to plead it. In any event, Plaintiffs have adequately alleged Ms. Tsanos' knowledge and intent for their interference torts,[6] statutory claims,[7] and civil RICO claim.[8]

*Second*, Ms. Tsanos argues that "individuals may not be held liable" for interference with contractual relationships and prospective economic advantage. ECF No. 8 at 6. That's not the law. Individuals can be liable for interference torts. *Asahi Kasei Pharma Corp. v. Actelion Ltd.*, 222 Cal. App. 4th 945, 966 (2013), *as modified on denial of reh'g* (Jan. 16, 2014) (affirming judgment for individual defendants and rejecting argument that individual defendants cannot be personally liable for interference torts). Even the authority Ms. Tsanos cites supports imposing liability for tortious interference by individual defendants. *PMC, Inc. v. Kadisha*, 78 Cal. App. 4th 1368 (2000), as modified on denial of reh'g (Apr. 7, 2000) (holding that corporate officer or director may be liable for interference with prospective economic advantage). And Plaintiffs' statutory

---

[6] *Compare Ixchel Pharma, LLC v. Biogen, Inc.*, 9 Cal. 5th 1130, 1141 (2020) (explaining that interference with contract requires knowledge of contract and intent to disrupt, while interference with economic advantage requires knowing interference with an economic relationship between the plaintiff and some third party) *with* FAC ¶¶ 36-39, 44-45 (alleging same).

[7] *Compare* Cal. Bus. & Prof. Code §§ 510(c) (prohibiting an individual's decision to penalize a health care practitioner principally for advocating for appropriate health care), 2056(c) (making it illegal to retaliate or penalize physicians for advocating medically appropriate health care) *with* FAC ¶¶ 50-51, 55-56 (alleging same).

[8] *Compare Pacheco v. Golden Living Ctr.-Summit*, No. 3:10CV1641, 2011 WL 744656, at *3 (M.D. Pa. Feb. 23, 2011) (A plaintiff must plead the following to assert a proper RICO violation: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.") (citations omitted) *with* FAC ¶¶ 62-65 (alleging same).

claims both prohibit individuals from retaliating against practitioners who advocate for medically appropriate care. Cal. Bus. & Prof. Code §§ 510(c) ("The application and rendering by any individual, partnership, corporation, or other organization of a decision to terminate an employment or other contractual relationship with or otherwise penalize a health care practitioner principally for advocating for appropriate health care . . . violates the public policy of this state."), 2056 ("No person shall terminate, retaliate against, or otherwise penalize a physician and surgeon for that advocacy, nor shall any person prohibit, restrict, or in any way discourage a physician and surgeon from communicating to a patient information in furtherance of medically appropriate health care.").

***Third***, Ms. Tsanos argues that corporate agents are not personally liable for breaching a corporation's contracts or for inducing a breach of a corporation's contracts. ECF No. 8 at 6. But Plaintiffs have not sued Ms. Tsanos for breaching Mercy's contracts or for inducing a breach of Mercy's contracts. Plaintiffs' interference tort claims stem from Ms. Tsanos's interference with ***Plaintiffs'*** current and prospective contractual relationships ***with patients***. ECF No. 5 ¶¶ 36-38, 44-45. Thus Ms. Tsanos' arguments about a corporate agent interfering with a corporation's contracts don't apply here.

Plaintiffs acknowledge that not every claim against a corporation can also be made against corporate agents. For example, Dr. Sairam's wrongful termination claim is brought against Mercy and not Ms. Tsanos. ECF No. 5 ¶¶ 67-71. This is because wrongful termination claims cannot be brought against supervisors or other corporate agents. *Miklosy v. Regents of Univ. of California*, 44 Cal. 4th 876, 901 (2008) ("We conclude therefore that the common law *Tameny* cause of action for wrongful termination in violation of public policy lies only against an employer."). But Plaintiffs' interference tort, statutory, and civil RICO claims are appropriately brought against Ms. Tsanos individually.

### D. Plaintiffs Allege a Civil RICO Claim Against Ms. Tsanos.

#### 1. Plaintiffs Satisfy RICO's Liberal Pleading Requirements

The Racketeer Influenced and Corrupt Organizations Act ("RICO") provides a private civil action to recover treble damages for injury "by reason of a violation of" its substantive provisions. 18 U.S.C. § 1964(c). Congress included in RICO a "a far-reaching civil enforcement scheme."

*Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 484 (1985).  In doing so, "Congress wanted to reach both 'legitimate' and 'illegitimate' enterprises" that violate the RICO statute.  *Id.* at 499.  This includes skilled nursing homes like Mercy and their agents.  *Pacheco v. Golden Living Ctr.-Summit*, No. 3:10CV1641, 2011 WL 744656, at *1 (M.D. Pa. Feb. 23, 2011) (denying motion to dismiss civil RICO claims against nursing home and its employee); *Corley v. Rosewood Care Ctr., Inc.*, 142 F.3d 1041, 1045 (7th Cir. 1998) (reversing summary judgment and remanding civil RICO claim against nursing home).

A civil RICO claim must plead (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.  *Sedima*, 473 U.S. at 496.  The RICO "statute requires no more than this." *Id.* at 497.  In evaluating whether a plaintiff has adequately stated a civil RICO claim, "RICO is to be read broadly" and "liberally construed to effectuate its remedial purposes." *Id.* at 497-498; *see also Pro-Com Prod., Inc. v. Kings Express LA, Inc.*, No. CV 18-6035-DMG (SKX), 2019 WL 1771652, at *4 (C.D. Cal. Feb. 21, 2019) ("This case stretches RICO beyond its intended limit, but the Court cannot dismiss Plaintiff's claim on the basis of the pleadings.").  Under this standard, Plaintiffs have stated a plausible civil RICO claim against Ms. Tsanos.

During Dr. Sairam's tenure as Medical Director from 2017 until earlier this year, he identified and reported multiple improper medical and billing practices at Mercy.  *See, e.g.*, ECF No. 5 ¶¶ 20 (alleging that Dr. Sairam complained to Mercy about another physician's practice of billing Medicare as if he had personally performed services that were performed by medical scribe), 21-22 (alleging that Dr. Sairam complained to Mercy about physicians performing unnecessary medical procedures on patients, including patients unable to consent; alleging that Mercy has allowed physicians to perform medically unnecessary wound debridements; and alleging that physicians "routinely documented inaccurate measurements and severity of the wounds to make them appear to be more severe, presumably to justify larger bills"), 12-17 (alleging that a Mercy administrator unlawfully reversed a patient's DNR order).  These practices are wrongful not only because they violate the law and compromise patient well-being and safety, but also because they lead to the submission of claims for payment to the federal government that, either expressly or implicitly, certify compliance with the laws and regulations regarding the provision of healthcare services in

violation of 18 U.S.C. § 1343.  ECF No. 5 ¶¶ 62, 65, 65 n. 2.

Dr. Sairam alleges that his efforts to advocate for medically appropriate care were rebuffed by Mercy and Ms. Tsanos (ECF No. 5 ¶ 12), and he was ultimately terminated because of them (*Id.* ¶¶ 17-20).  Dr. Sairam impedes Mercy's way of doing business, including its ability to retain physicians who engage in the suspect billing practices that Dr. Sairam reports, and when "given the option of keeping Dr. Sairam and encouraging above-board billing and care practices or attracting practitioners who have no scruples about cutting corners if it improves the bottom line, Mercy has chosen the latter." *Id.* ¶¶ 20, 23-24 (alleging "Mercy was fed up with Dr. Sairam's refusal to place patient well-being second to profits and administrative expediency").  Mercy's termination of Dr. Sairam and its subsequent actions to drive him completely from the premises were taken to protect its ability to continue its non-compliant practices while still submitting claims to the government for payment, and because this was affected by means of mail and wire, Mercy's actions violate the federal civil RICO statute.  ECF No. 5 ¶¶ 62, 65, 65 n.2.

### 2.  RICO Applies to Non-Profit Companies and Individuals

Ms. Tsanos appears to make two principal arguments to challenge Plaintiffs' RICO claim.  First, she appears to argue that Plaintiffs' RICO claims are not plausible because Mercy is a non-profit corporation providing medical care to "aged and infirm patients" rather than an organized crime syndicate.  ECF No. 8 at 7-8 (arguing that seeking to impose RICO liability "against a non-profit medical organization is a significant stretch").  The Supreme Court has repeatedly rejected this argument and has confirmed that the RICO truly does apply to "[a]ny person." *Sedima*, 473 U.S. at 495 (quoting statute and noting that RICO applies to "'any person'—not just mobsters").  Ms. Tsanos's motion even cites decisions undercutting her argument. *See* ECF No. 8 at 8.  In *H.J. Inc. v. Nw. Bell Tel. Co.*, the Court specifically refused to read "an organized crime limitation" into RICO's text.  492 U.S. 229, 230-31, 243-45, 249 (1989) (expressly rejecting argument that "a defendant's racketeering activities form a pattern only if they are characteristic of organized crime" or are committed by "an organized-crime-type perpetrator").  The Supreme Court repudiates the notion that the use of the civil RICO statute against "respected businesses" is grounds for inferring the statute had been misapplied, observing that "[l]egitimate businesses enjoy neither an inherent

Page 14

incapacity for criminal activity nor immunity from its consequences." *Id.* at 249 (internal citations omitted). Courts have also applied RICO to nursing homes like Mercy. *Pacheco*, No. 3:10CV1641, 2011 WL 744656, at *1 (denying motion to dismiss civil RICO claims against nursing home and its employee); *Corley*, 142 F.3d at 1045 (7th Cir. 1998) (reversing summary judgment and remanding civil RICO claim against nursing home).

### 3. Plaintiffs Have Alleged a Plausible Conspiracy or Pattern of Racketeering Activity.

Ms. Tsanos advances several arguments that Plaintiffs do not plead any predicate acts or that the predicate acts are not "plausible"; that the FAC fails to allege a pattern of racketeering activity because it describes a "single scheme" spanning a "brief" period; that the allegations related to fraudulent billing are "non-sensical" because they do not describe a fraudulent scheme; and that the conspiracy allegations are insufficient because they consist solely of a "single letter" that may have had a legitimate purpose. *See* EFC No. 8 at 8. None of these arguments warrant dismissal of the RICO claim.

Ms. Tsanos does not explain why the FAC's allegations are not plausible or why they do not constitute predicate acts of racketeering activity. Plaintiffs allege that the defendants engaged in mail and wire fraud, both of which are RICO predicates. 18 U.S.C. § 1961(1)(B). Mail fraud occurs whenever a person, "having devised or intending to devise any scheme or artifice to defraud," uses the mail "for the purpose of executing such scheme or artifice or attempting so to do." 18 U.S.C. § 1341. The gist of the offense is the scheme to defraud, and any "mailing that is incident to an essential part of the scheme satisfies the mailing element," *Schmuck v. United States*, 489 U.S. 705, 712 (1989) (citation and internal quotation marks omitted), even if the mailing itself "contain[s] no false information." *Id.* at 715. Here, the mail fraud allegation stems from "mailing letters (signed by Ms. Tsanos on behalf of Mercy) to all of Dr. Sairam's patients at Mercy to obtain money or property by means of false pretenses and representations." *Id.* ¶¶ 25 (detailing letters containing false representations mailed in January 2021 to Dr. Sairam's patients), 65 (alleging letters as predicate act for RICO).

The wire fraud claim is based on "submitting claims for payment to the federal government that, either expressly or implicitly, certify compliance with the laws and regulations regarding the provision of healthcare services, despite the pattern of legal violations." ECF No. 5 ¶ 65. Plaintiffs explain that Mercy and its representatives have to submit electronic CMS-2540-10 forms to the Medicare program for reimbursement and that these forms require Mercy and its representative to certify its compliance with healthcare laws as a precondition for payment. *Id.* ¶ 65, n. 2. Plaintiffs allege various violation of healthcare laws by Mercy and its agents, making such representations false. *Id.* ¶¶ 13, 14, 16, 34, 76, 77 (citing laws Mercy violated).  This gives Ms. Tsanos notice of the particular misconduct so that she can defend against the charge. *Stitt v. Citibank, N.A.*, 942 F. Supp. 2d 944, 954 (N.D. Cal. 2013) (explaining pleading requirement for RICO claims based on mail and wire fraud as predicate acts).

Ms. Tsanos also argues that Plaintiffs have not alleged a pattern of racketeering activity because they concern only a single scheme occurring over a brief period. *See* ECF No. 8 at 8. Ms. Tsanos appears to argue that Plaintiffs must plead "multiple schemes" or allege that the racketeering activity must extend over a prolonged period of time—but that is not the law. *See H.J. Inc.*, 492 U.S. at 240-242 (1989).  A pattern of racketeering activity "refer[s] either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition," and which can be shown where "the predicate acts or offenses are part of an ongoing entity's regular way of doing business" or where there is a "threat of repetition extending indefinitely into the future." *Id.*  Under this standard, Plaintiffs have stated a claim.

Plaintiffs have provided multiple examples of practices occurring at Mercy during Dr. Sairam's tenure as Medical Director—a period of more than four years—that prioritize profits or administrative expediency over patient care and legal compliance, and led to annual misrepresentations electronically submitted to the government.  It also alleges that to continue these practices without obstruction, Mercy has embarked on a continuing campaign to drive Dr. Sairam from the facility, first by terminating him, and then seeking to transfer his patients to other providers, including by sending misleading letters, threatening to bar him from the premises for pretextual reasons, adopting new policies designed to interfere with his ability to communicate with Mercy staff

regarding patient care and to interfere with a patient's choice of attending physician. This is sufficient to allege that the predicate acts are "part of an ongoing entity's regular way of doing business" and carry a "specific threat of repetition extending indefinitely into the future." *See H.J. Inc.*, 492 U.S. at 239; *see also Sun Sav. & Loan Ass'n v. Dierdorff*, 825 F.2d 187 (9th Cir. 1987) (finding continuity where defendant committed predicate acts of mail fraud by sending four letters intended to cover up his kickback scheme); *Ikuno v. Yip*, 912 F.2d 306, 308-09 (9th Cir. 1990) (finding open-ended continuity based on two filings of false annual reports because "there [was] no evidence that [the defendant] would have stopped [filing false annual reports] if [the company] had not ceased to do business"); *Corley*, 142 F.3d at 1050 (ruling that complaint satisfied continuity requirement where court could infer that nursing home would continue to conduct its business in a fraudulent way from allegations that nursing home mailed misleading letters to prospective residents).

Plaintiffs' allegations must be viewed in their totality on a motion to dismiss, not in isolation. *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) ("[T]he complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible."). When read with the other allegations in the FAC, one can reasonably infer that Ms. Tsanos mailed the letters to Dr. Sairam's patients as part of Mercy's plan to oust Dr. Sairam from Mercy because Dr. Sairam had made himself an obstacle to its ability to maximize profits by violating its legal obligations to Mercy's residents and physicians. This is sufficient to plead the existence of a conspiracy. *See United States v. Grovo*, 826 F.3d 1207, 1216 (9th Cir. 2016) (a conspiracy may be inferred from the defendants' acts pursuant to a scheme or other circumstantial evidence); *Wyatt*, 24 Cal. 3d at 784-85 (conspiracy "'may be inferred from the nature of the acts done, the relation of the parties, the interests of the alleged conspirators, and other circumstances'"). To the extent Ms. Tsanos disputes the probative value of Plaintiffs' allegations, this argument is not properly raised on a motion to dismiss, and should be left for the trier of fact. *Standard Oil Co. of Cal. v. Moore*, 251 F.2d 188, 210-11 (9th Cir. 1957).

Ms. Tsanos counters that it is "equally plausible" that the letter she sent "was just an announcement regarding the changes." ECF No. 8 at 8. Plaintiffs disagree, but even if Ms. Tsanos were correct, "[t]he choice between two plausible inferences that may be drawn from factual

Page 17

allegations is not a choice to be made by the court on a Rule 12(b)(6) motion." *AndersonNews, L.L.C. v. Am. Medica, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012). The court cannot dismiss a complaint that alleges a "plausible version of the events merely because the court finds a different version more plausible." *Id.* The plausibility pleading requirement is not a probability requirement. *See id.* (citing *Twombly*, 550 U.S. at 555).

Ms. Tsanos concludes by arguing that the allegations related to fraudulent billings are "nonsensical" because they do not plead a "fraudulent scheme." ECF No. 8. But as set forth above, Plaintiffs allege that Mercy and Ms. Tsanos have violated—and continue to violate—health care regulations, and that Mercy and its agents submit claims for payment to the government after annually falsely certifying compliance with healthcare laws and regulations. ECF No. 5 at ¶ 65. Ms. Tsanos has furthered this scheme by mailing letters in January 2021 to Dr. Sairam's patients containing false representations about his availability to treat patients at Mercy, in an effort to prevent Dr. Sairam from impeding Mercy's ongoing wrongdoing. *Id.* at ¶ 18. Given the nature of this scheme, these facts plead enough of the circumstances and content of the false representations to inform Ms. Tsanos of the alleged conduct, and thus survive a motion to dismiss. *Stitt*, 942 F. Supp. 2d at 957.

### E.   If This Court Grants Ms. Tsanos's Motion, It Should Give Leave to Amend

Should the Court be inclined to grant Ms. Tsanos's motion in whole or in part, Plaintiffs should be given leave to amend. Under Fed. R. Civ. P. 15(a), leave to amend "shall be freely granted when justice so requires." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

Ms. Tsanos' motion is the first challenge to any of Plaintiffs' allegations. Plaintiffs could clarify existing allegations or add new facts if the Court felt that were necessary. For example, Plaintiffs could allege that a patient representative informed Dr. Sairam that Mercy tried to transfer her husband to another provider in February 2021, and when she asked Mercy why her husband's attending physician was being changed, she was told that the decision to transfer patients from Dr. Sairam was made by Ms. Tsanos and Nicole Foreman. Additionally, Mercy's first response to Dr. Sairam's initial cease and desist in February 2021 was made by Ms. Tsanos, confirming her knowledge of Mercy's tortious and retaliatory scheme against Plaintiffs. Plaintiffs could also add

that Ms. Tsanos is cc'ed on emails from Mercy administrators that carry out Mercy's post-filing retaliation against Dr. Sairam, again showing her involvement in the ongoing wrongdoing against Plaintiffs.

## IV. CONCLUSION

For the reasons set forth above, Plaintiffs ask this Court to deny Ms. Tsanos's motion. If the motion is granted, in whole or in part, Plaintiffs request leave to amend.

Dated: August 2, 2021　　　　　　　　　　KESSENICK GAMMA & FREE, LLP

　　　　　　　　　　　　　　　　　　　　　/s/ Michael A. Gawley

　　　　　　　　　　　　　　　　　　　　　MICHAEL A. GAWLEY
　　　　　　　　　　　　　　　　　　　　　JAMES MAXWELL COOPER
　　　　　　　　　　　　　　　　　　　　　SYDNEY A. WARD

　　　　　　　　　　　　　　　　　　　　　Attorneys for Plaintiffs
　　　　　　　　　　　　　　　　　　　　　SAMIR SAIRAM, M.D.
　　　　　　　　　　　　　　　　　　　　　SAMIR SAIRAM, M.D., INC.