SHARON L. HIGHTOWER, ESQ. – S.B.N. 129874
LAURA E. MALKOFSKY, ESQ. – S.B.N. 142536
ERICKSEN ARBUTHNOT
210 North Fourth Street, Suite 350
San Jose, CA 95112
Telephone: (408) 286-0880
Facsimile: (408) 286-0337
shightower@ericksenarbuthnot.com
lmalkofsky@ericksenarbuthnot.com

Attorneys for Defendants,
MERCY RETIREMENT CARE CENTER
And TAMRA MARIE TSANOS

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAMIR SAIRAM, M.D., an individual; SAMIR SAIRAM, M.D., INC., a California professional corporation;<br><br>Plaintiff,<br><br>vs.<br><br>MERCY RETIREMENT AND CARE CENTER, a California corporation; TAMRA MARIE TSANOS, and DOES 1-25<br><br>Defendants. | **Case No. 3:21-cv-04335-EMC**<br><br>**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT; [FRCP 12(b)(6)]**<br><br>**Date:** **January 13, 2022**<br>**Time:** **11:00 a.m.**<br>**Judge:** **The Hon. Edward M. Chen**<br>**USDC, Northern District**<br>**Phillip Burton Federal Building**<br>**450 Golden Gate Avenue**<br>**San Francisco, CA 94102** |

# TABLE OF CONTENTS

Page

I. INTRODUCTION 1

II. LEGAL ARGUMENT 1

A. There Is Nothing Preventing Defendants From Raising New Arguments In This Motion to Dismiss The Second Amended Complaint 1

B. The Fifth Cause of Action for Civil RICO Violations Must Be Dismissed Without Further Leave to Amend 2

1. Despite Plaintiffs' Contention Otherwise, The SAC Does Not Allege Multiple Predicate Acts of Mail and Wire Fraud 2

2. The RICO Claim Fails To Allege A Pattern Of Racketeering Activity Because The Mail and Wire Fraud Claims Are Not Related 4

3. Even If The Mail And Wire Fraud Allegations Are Considered To Be Related, The SAC Does Not Contain *Facts* Supporting The Alleged Goal Of Maximizing Profits And Therefore The RICO Cause Of Action Must Be Dismissed 5

4. The RICO Claim Fails To Allege A Threat Of Continued Criminal Activity 7

5. Defendants Do Not Contend RICO Can Never Apply to A Skilled Nursing Facility 9

C. All Causes of Action Against Ms. Tsanos Must be Dismissed Because They All Require an Employer-Employee Relationship And Are Not Applicable To Individual Employee Defendants 10

D. Leave to Amend Would Be Futile And Should Not Be Granted 12

III. CONCLUSION 13

**TABLE OF AUTHORITIES**


Page

**9th Cir. Court of Appeals Cases**

*Albers v. Yarbrough World Solutions, LLC*, Case No. 5:19-cv-05896-EJD (N.D. Cal. Oct. 14, 2020) — 7, 8

*Holly D. v. California Institute of Technology*, 339 F.3d 1158, 1179 (9th Cir. 2003) — 10

*Salameh v. Tarsadia Hotel* 726 F.3d 1124 (9th Cir. 2013) — 13

*Steckman v. Hart Brewing* 143 F.3d 1293 (9th Cir. 1998) — 12

*Zixiang Li v. Kerry* 710 F.3d 995, 999 (9th Cir. 2013) — 12

**District Court Cases**

*Grigg v. Griffith Co.*, No. 1:13-CV-01379-AWI-JLT, 2013 U.S. Dist. LEXIS 152518, (E.D. Cal. Oct. 23, 2013) — 10

*Lelaind v. City and County of San Francisco*, 576 F.Supp.2d 1079 (N.D. Cal. 2008) — 10

*Navajo Health Foundation v. Razaghi Dev. Co.* (2020) U.S. Dist. LEXIS 249640 — 9

*Washington v. Lowe's HIW Inc.*, 7 5 F.Supp.3d 1240 (N.D. Cal. 2014) — 10

**Other Federal Appellate Court Cases**

*Farm Credit Services v. American State Bank* 339 F.3d 764 (8th Cir. 2003) — 1

**California State Cases**

*Albertson v. Raboff* (1956) 46 Cal.2d 375 — 3, 4

*Miklosy v. Regents of Univ. of California* (2008) 44 Cal.4th 876 — 10, 12

*Reno v. Baird* 18 Cal.4th 640, 644, (Cal. 1998) — 10

*Rubin v. Green* (1993) 4 Cal.4th 1187 — 4

**Statutes**

Calif. Business & Professions Code §510 — 12

Calif. Business & Professions Code §2056 — 12

Calif. Lab. Code §1102.5 — 12

Cal. Labor Code § 1104 — 12

F.R.C.P. Rule 12 — 1, 2

(RICO) 18 U.S.C. §1962(c) and (d) — passim

## I. INTRODUCTION

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court is "free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations." *Farm Credit Services v. American State Bank*, 339 F.3d 764, 767 (8th Cir. 2003) (citation omitted). Here, Plaintiffs' RICO cause of action in the FAC did not survive a motion to dismiss. The purpose of allowing Plaintiffs leave to amend was to afford them the opportunity to add additional facts (as opposed to repetitive, sweeping legal conclusions) to support their cause of action asserting that Mercy engaged in racketeering activity. However, no such facts were added to the SAC (because none exist). Instead, the SAC's RICO claim is replete with sweeping legal conclusions cast in the form of factual allegations that still does not constitute a viable RICO cause of action. Moreover, the entirety of the SAC must be dismissed as to the individual defendant, Tamra Tsanos, because the causes of action alleged against all require an employer-employee relationship and barred from being alleged against anyone but Plaintiffs' "employer".

## II. LEGAL ARGUMENT

### A. There Is Nothing Preventing Defendants From Raising New Arguments In This Motion to Dismiss The Second Amended Complaint

This is Defendants' first Motion to Dismiss the SAC. However, Plaintiffs' Opposition claims that Defendants are required to assert in this Motion, only those arguments they made in their Motion to Dismiss the First Amended Complaint (FAC). Plaintiffs incorrectly claim that F.R.C.P. 12(g)(2) supports this contention. F.R.C.P. 12(g)(2) states as follows: "(g) Joining Motions. (1) . . . (2) Limitation on Further Motions. Except as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion."

Plaintiffs have misinterpreted this section of the statute. What this rule can only logically mean, is that if, in the future, Defendants seek to make another Motion to Dismiss the Second Amended Complaint, they cannot raise new arguments not made in this motion. However, since this is the first Motion to Dismiss the Second Amended Complaint filed by Defendants, they are not required to limit their arguments herein to only those they asserted in their Motion to Dismiss the FAC. If the rule were interpreted the way Plaintiffs contend, Defendants would have to limit their arguments herein to only those made in its Motion to Dismiss the FAC, even if Plaintiffs raised new causes of action or allegations never raised in the FAC. Plaintiffs' interpretation of F.R.C.P. 12(g)(2)would frustrate the purpose of the statute and lead to absurd results. Since Plaintiffs have filed a new Complaint (the SAC), Defendants are free to attack it by making any and all arguments available to them.

### B. The Fifth Cause of Action for Civil RICO Violations Must Be Dismissed Without Further Leave to Amend

#### 1. Despite Plaintiffs' Contention Otherwise, The SAC Does Not Allege Multiple Predicate Acts of Mail and Wire Fraud

Plaintiffs contend throughout their Opposition that the "SAC alleges multiple predicate acts of mail and wire fraud united by a common purpose of furthering Mercy's ability to continue to submit claims to the government for payment while engaging in non-compliant health care practices without interference from Dr. Sairam. ECF No. 29 ¶¶25; 32; 36; 45-46, 74, 78." (Opposition, 10:9-12). Yet when one actually reads these paragraphs that are repeatedly cited in the Opposition, it is clear that they do not allege what Plaintiffs claim:

- Paragraph 25 relates to the one letter Mercy sent to its residents truthfully announcing Plaintiff's departure as Medical Director – The SAC never claims this letter is false – it merely contends that by *implication*, it could potentially mislead Mercy residents into thinking Dr. Sairam would not continue treating them as their private physician;

- Paragraph 32 refers to an unidentified letter to some unidentified Mercy residents, allowing them to confirm that they wish to continue having Dr. Sairam as their treating physician;

- Paragraph 36 alludes to the same letter as in Paragraph 25 announcing Plaintiff's departure as Medical Director;
- Paragraph 45 refers to *three emails sent by counsel for Mercy, not employees of Mercy;*
- Paragraph 46 refers again to the *same* allegedly "misleading" letter announcing Plaintiff's departure as Medical Director;
- Paragraph 74 does not refer to any letters or emails; and
- Paragraph 78 is merely a conclusory allegation that "Defendants continue to take actions . . . by misleading his patients (both by mail and orally). Defendants resorted to the numerous wrongful acts alleged herein, including through use of mail and wire communications. . ." (Opposition, 19:5-11).

To summarize: These allegations consist of one *truthful* letter mailed by Mercy to its residents announcing Plaintiff's departure as Medical Director that allegedly could be misleading, one letter of no specified date asking unspecified residents to confirm that *they wanted to continue being treated by Dr. Sairam*, and three emails sent by Mercy's attorney in anticipation of litigation.[1] As for this second letter, it begs the question of how a letter asking residents to confirm that they want to continue being treated by Dr. Sairam is evidence of the "racketeering activity" allegedly aimed at forcing Plaintiffs out of Mercy. Finally, as for the letters and emails authored by counsel for Mercy, Plaintiffs cannot possibly include them as being part of the "predicate acts" of mail or wire fraud by Mercy when no one at Mercy wrote, mailed or emailed them.

It should also be noted that letters written by counsel are privileged under Cal. Civ. Code §47. Pursuant to CC §47, a "privileged publication or broadcast is one made: . . . (b) In any . . .(2) judicial proceeding. . ." "For well over a century, communications with 'some relation' to judicial proceedings have been absolutely immune from tort liability by the privilege codified as section 47 (b)." At least since then – Justice Traynor's opinion in *Albertson v. Raboff* (1956) 46 Cal.2d 375, (citations omitted), California Courts have given

---

[1] The SAC refers to letters and emails sent by Plaintiff's counsel and Mercy's counsel throughout the allegations, as both parties involved their attorneys prior to plaintiff filing suit. Plaintiff is relying on the letters and emails from Mercy's attorneys as being part of the alleged RICO scheme.

the privilege an expansive reach. (fn omitted). Indeed, as we recently noted, "the only exception to [the] application of section 47(2) [now section 47(b)] to tort suits has been for malicious prosecution actions. [Citations]". *Rubin v. Green* (1993) 4 Cal.4th 1187, 1194. "Following *Albertson v. Raboff, supra*, 46 Cal.2d 375, numerous decisions have applied the privilege to prelitigation communications . . ." *Id.* at 1195.

Whether the letters and emails authored and sent by counsel are privileged or not, they must be ignored for purposes of analyzing the adequacy of the SAC's RICO claim and specifically, the alleged "multiple acts of mail and wire fraud." The facts pled on the face of the SAC simply do not amount to "multiple predicate acts" of wire or mail fraud.

**2. The RICO Claim Fails To Allege A Pattern Of Racketeering Activity Because The Mail and Wire Fraud Claims Are Not Related**

The ***facts*** alleged in the SAC are no different than those of the FAC. However, Plaintiffs have tweaked their arguments and now assert that the January 21, 2021 letter announcing Dr., Sairam's departure as Medical Director (the alleged "mail fraud") as part of a broad scheme drive Plaintiffs out of Mercy so that Mercy can continue with the alleged fraudulent billing by private physicians who treat Mercy residents (the alleged "wire fraud"). For example, Plaintiffs added the conclusory and unsupported allegation in paragraph 74 of the RICO cause of action that the "purpose of this enterprise is to maximize profits by submitting claims for payment to the government notwithstanding non-compliance with the laws and regulations governing the provision of health care services and the failure to provide medically appropriate care". (Opposition, 17:24-27) Plaintiffs further argue that the motivation for driving Plaintiffs away is "Dr. Sairam's history of blowing the whistle on substandard care or fraudulent billing practices at the facility." (SAC, 5:20-21.) Unfortunately for Plaintiffs, the facts alleged on the face of the SAC do not support this alleged broad scheme.

According to Plaintiffs, Mercy wants to get rid of Dr. Sairam because it fears he will become a "whistleblower". Mercy's fear is supposedly because of one anecdote found in the SAC at page 5, paragraph 20, which relates that "shortly after joining Mercy" (2017 – para. 8

of the SAC), Dr. Sairam noticed that a physician sent a medical scribe to see a patient and billed Medicare as if he had personally performed the services charted by the scribe. The allegation continues that "Dr. Sairam complained to Mercy about this practice." (SAC 6:1.) In paragraph 21, Plaintiffs allege that physicians "routinely documented inaccurate measurements and severity of the wounds to make them appear to be more severe, presumably to justify larger bills." (SAC, 6:14-16). Plaintiffs allege that Dr. Sairam raised these concerns with Mercy. (SAC, 6:17.).

These allegations do not come close to suggesting that Dr. Sairam was a "whistleblower" and that Mercy is motivated to remove him for that reason. The SAC is devoid of allegations that Dr. Sairam planned on reporting this alleged behavior to the federal government, allegations that he threatened anyone at Mercy that he would make such a report, and allegations that Mercy had some reason to suspect that he was about to make such a report. Furthermore, driving Plaintiffs away from Mercy would not prevent Dr. Sairam from reporting this alleged wrongdoing to the federal government. To the contrary, Dr. Sairam would have more motivation to make such a report if he was no longer connected to Mercy, because he would be immune from retaliation. Thus, the theory that Defendants sought to get rid of Plaintiffs to further their scheme to maximize profits does not hold water. The absence of **factual allegations** in the SAC to support this theory means that the SAC fails to adequately allege facts that the mail and wire fraud allegations are related. This, in turn, means that the SAC fails to state a viable RICO claim.

### 3. Even If The Mail And Wire Fraud Allegations Are Considered To Be Related, The SAC Does Not Contain *Facts* Supporting The Alleged Goal Of Maximizing Profits And Therefore The RICO Cause Of Action Must Be Dismissed

Even if Plaintiffs can overcome the hurdle of establishing that the alleged acts of mail and wire fraud promote a common purpose, the SAC does not allege any facts to support that this common purpose has a basis in reality. Plaintiffs theorize that the goal of the alleged racketeering activity was tied to Mercy's prioritizing profits over medical care. The defect in this theory is that ***there is not a single allegation in the SAC that Mercy was***

***submitting false bills to Medicare.*** The assertion of fraudulent billing or of physicians making wounds look more severe than they were so that they could submit higher bills are assertions against private physicians who treated residents at Mercy. Mercy is a retirement home where elderly residents live. It provides meals, laundry service, transportation, activities, and some nursing care. However, it does not provide, *and the SAC never alleges that Mercy provides, doctors for its residents*. Because Mercy does not provide medical care above the level of skilled nursing, it would never submit bills to the government for doctors' services. In fact, the face of the SAC itself explains how the billing works for doctors who treat Mercy residents[2]:

> Under the Patient Contracts, Dr. Sairam agreed to treat residents at Marcy as their attending physician in exchange for the right to bill the resident's insurer for payment. This agreement also allowed Sairam Corp's nurse practitioner to treat Dr. Sairam's patients (under Dr. Sairam's supervision). Both Dr. Sairam's services and the nurse practitioner's services were billed through Sairam Corp. Once the patients terminate their Patient Contracts by transferring care to another attending physician, Plaintiffs can no longer generate revenue from the resident's insurer for payment as the resident's attending physician. (SAC 14:19-25.)

As the SAC makes clear, it is the individual private doctors treating Mercy residents who receive the income for this treatment – it is not Mercy. Therefore, Mercy has no reason to develop a plan of racketeering activity to prevent Plaintiffs from providing care for its residents if the residents want Dr. Sairam.[3] This explains why there are no actual facts in the SAC supporting the conclusory allegations that Mercy is motivated by profits to oust Dr. Sairam.

**The significance of the absence of these facts in the SAC** cannot be overstated. It undermines the entirety of Plaintiffs' RICO cause of action because without these facts, the

---

[2] While Defendants reject the notion that Plaintiffs had written contracts with the Mercy residents they treated, the description in the SAC of direct billing by doctors to resident's insurance carriers is accurate.

[3] Plaintiffs admit in their Opposition that Mercy does not submit claims for reimbursement to the federal government for physicians' professional services. (Opposition, 21:16-19, and fn 5). There are no allegations in the SAC regarding Mercy submitting false invoices for skilled nursing services.

alleged goal of maximizing profits is exposed as a fiction concocted by Plaintiffs to justify a RICO claim that allows the recovery of treble damages. Although Plaintiffs repeat their conclusory allegations ad nauseam in their Opposition that Mercy's goal is to drive Dr. Sairam out of Mercy entirely so that it can continue "submit[ting] claims whilst engaged in their non-compliant practices without Dr. Sairam's interference . . .", without actually alleging facts regarding Mercy submitting false claims for physician treatment of residents to the government, Plaintiffs cause of action for RICO falls apart. If the factual allegations are absent, the RICO claim must be dismissed.

**4. The RICO Claim Fails To Allege A Threat Of Continued Criminal Activity**

A further requirement for an adequately pled RICO cause of action is an allegation that the pattern of racketeering activity "amount to or pose a threat of continued criminal activity." *H.J.,* supra, 492 U.S. at 239. The SAC alleges that because the termination of Dr. Sairam's medical directorship did not terminate his patient-physician relationships at Mercy, Defendants continue to take actions that interfere with those relationships and that otherwise burden and impede his ability to treat his patients (SAC, para. 78). Plaintiffs further allege that this ongoing campaign to oust Dr. Sairam from Mercy, using mail and wire communications, is so that it can continue to submit claims to the government while engaged in non-compliant practices without his interference. However, other than the untenable allegation of submitting false Medicare claims to the government, the defects of which are discussed above, there are no factual allegations which would support the required RICO element of *continued* wire and mail fraud.

"To support the mail and wire fraud allegations, the plaintiff[] must plausibly allege the existence of a scheme or artifice to defraud or obtain money or property by false pretenses, representations or promises, and that defendants communicated, or caused communications to occur, through the U.S. mail or ***interstate wires*** to execute that fraudulent scheme." *Albers v. Yarbrough World Solutions, LLC*, Case No. 5:19-cv-05896-EJD, 2020 WL 6064334, at (N.D. Cal. Oct. 14, 2020) (emphasis added.) Because Fed. R. Civ. P. 9(b)

requires a plaintiff to plead mail and wire fraud allegations with particularity, a plaintiff must set forth, with detail, the time, place, and contents of the alleged false representations. *Id*.

Here, Plaintiffs' Opposition contends that Defendants' moving papers did not address allegations in the SAC "[i]dentifying the use of mail and wire in connection with acts other than (1) the false claims submitted to the government or (2) the misleading letters mailed to Dr. Sairam's patients to establish continuity." (Opposition, 17:18-20.) The additional claims of wire fraud Plaintiffs contend support the element of continuity are:

1. Ms. Tsanos terminated Dr. Sairam by email;

2. Defendants falsely accused Dr. Sairam of violating COVID19 protocols and threatened to bar him from the premises by email;

3. Defendants adopted policies designed to make Dr. Sairam's job more difficult and burdensome and to unlawfully permit Mercy to select a patient's attending physician and disseminated these policies and demanded compliance with them by email;

4. Defendants terminated Dr. Sairam's access to the online portal he used to access his patients' COVID-19 results; and,

5. Defendants disparaged Dr. Sairam by email, claiming he was jeopardizing his patient's health and safety and failing to timely provide patient care orders.

Plaintiffs apparently contend that anytime people working together communicate via email, they are subjecting themselves to RICO charges. This is not the law. Instead, the law requires emails exchanged ***between states***:

> To support the mail and wire fraud allegations, the plaintiff[] must plausibly allege the existence of a scheme or artifice to defraud or obtain money or property by false pretenses, representations or promises, and that defendants communicated, or caused communications to occur, through the U.S. mail or ***interstate wires*** to execute that fraudulent scheme." *Albers v. Yarbrough World Solutions, LLC*, Case No. 5:19-cv-05896-EJD, 2020 WL 6064334, at *4 (N.D. Cal. Oct. 14, 2020) (internal brackets and quotation marks omitted).

> Because Fed. R. Civ. P. 9(b) requires a plaintiff to plead mail and wire fraud allegations with particularity, a plaintiff must set forth, with detail, the time, place, and contents of the alleged false representations. Id. (emphasis added)
>
> *Navajo Health Foundation v. Razaghi Dev. Co*. (2020) U.S. Dist. LEXIS 249640

In the SAC here, there are no allegations that any of the emails relied on by Plaintiffs meet the requirement of ***interstate*** wires. Plaintiffs do not allege that these emails originated from individuals or entities located in different states from one another, nor do they allege that the computer servers hosting the originating and/or receiving emails were based in different states when these communications were sent. *Id.* Unless the SAC contains allegations that allege continuity, the RICO claim must fail. Here, these additional alleged "predicate acts" are insufficient to establish continuity because they fail to allege facts supporting that a pattern of using the mail or ***interstate*** emailing was undertaken by Defendants.

**5. Defendants Do Not Contend RICO Can Never Apply to A Skilled Nursing Facility**

Plaintiffs misconstrue Defendants' argument regarding the application of RICO to Mercy. Defendants do not contend that RICO can never apply in a situation involving a skilled nursing facility. They simply point out that the application of RICO in this particular case, is misplaced and disingenuous. Plaintiffs here have made broad and conclusory statements that Mercy seeks to defraud the government by submitting false medical bills (alleged wire fraud), when the SAC itself does not even actually include specific facts alleging Mercy has ever submitted doctor bills to the government. It is quite obvious in this case that the only true reason Plaintiffs have included a RICO claim in their complaint is to seek the treble damages available under RICO.

In summary, Mercy does not request that the Court shield it from RICO liability because of its corporate status. Mercy makes this request because the RICO claim is not satisfactorily plead and could never be amended to meet all of the elements of a valid cause of action.

**C. All Causes of Action Against Ms. Tsanos Must be Dismissed Because They All Require an Employer-Employee Relationship And Are Not Applicable To Individual Employee Defendants**

Marie Tsanos is an improper Defendant in this case. California law offers numerous examples of when an employee is prohibited from suing a manager, officer, agent or employee of his or her employer. For example, the Ninth Circuit has consistently held that non-employer individuals cannot be held personally liable under Title VII. *Washington v. Lowe's HIW Inc*., 75 F.Supp.3d 1240, 1246-47 (N.D. Cal. 2014); see, e.g., *Holly D. v. California Institute of Technology*, 339 F.3d 1158, 1179 (9th Cir. 2003) ("[w]e have consistently held that Title VII does not provide a cause of action for damages against supervisors or fellow employees").

Similarly, under FEHA, [the California Fair Employment Housing Act], no individual liability attaches for claims of discrimination . . . or retaliation." *Lelaind v. City and County of San Francisco*, 576 F.Supp.2d 1079, 1089 (N.D. Cal. 2008) (citations omitted); see, e.g., *Reno v. Baird*, 18 Cal.4th 640, 644, (Cal. 1998) ("The FEHA, however, prohibits only 'an employer' from engaging in improper discrimination.").

As cited in Defendants' moving papers, this prohibition also includes wrongful termination claims in violation of public policy: "The California Supreme Court has held that an 'individual who is not an employer cannot commit the tort of wrongful discharge in violation of public policy.'" *Grigg v. Griffith Co*., No. 1:13-CV-01379-AWI-JLT, 2013 U.S. Dist. LEXIS 152518, (E.D. Cal. Oct. 23, 2013) (dismissing with prejudice that cause of action against the plaintiff's former supervisor) (citing *Miklosy v. Regents of Univ. of Cal*., 44 Cal. 4th 876, 900-01(2008)).

Here, Plaintiffs have attempted to plead around this prohibition by naming Tsanos in their causes of action for Intentional Interference with Contractual Relationships, Intentional Interference with Prospective Economic Advantage, Violation of Business & Professions Code §§510 and 2056 and RICO. Plaintiffs justify naming Tsanos by arguing that the dicta in *Miklosy* is not applicable here. Recall that *Miklosy* stated: "We see no analogous justification for imposing personal liability on supervisorial employees based on a common

law tort that depends on the existence of an employer-employee relationship between the tortfeasor and the victim." *Id.*

Plaintiffs' Opposition claims that the causes of action in the SAC naming Ms. Tsanos do not depend upon the employer-employee relationship between the tortfeasor and the victim, and therefore, the *Miklosy* dicta is inapplicable here. Yet the factual allegations in each of these causes of action do not support this theory. For example, in the First Cause of Action for Intentional Interference with Contractual Relations, Plaintiffs contend that "Mercy and Ms. Tsanos intentionally interfered with and disrupted the contractual relationship between Plaintiffs and Dr. Sairam's residents (sic) by taking the wrongful actions described above, which were intended to mislead or coerce Dr. Sairam's patients to terminate their Patient Contracts." (SAC 14:3-6) This allegation directly refers to Mercy's decision to invoke the Termination Without Cause clause of the MDA and the letter announcing Plaintiffs' departure as Medical Director, which Plaintiffs contend impliedly misled residents into thinking Dr. Sairam would not continue as their private physician. Defendant Tsanos is only involved in the termination of Plaintiffs' contract because it is part of her duties as the Executive Director of Mercy, Plaintiffs' "employer" (for the purposes of this motion).

Similarly, the Second Cause of Action for Intentional Interference with Prospective Economic Advantage alleges: "By terminating Dr. Sairam's medical directorship, Defendants took deliberate action to interfere with the economic relationship between Plaintiffs and Mercy's future residents." (SAC 15:19-20.) Thus, this cause of action also depends entirely on the existence of the "employer-employee" relationship.

Plaintiffs' Third and Fourth Causes of Action for Violations of B&P Code §§510 and 2056 also depend on the "employer-employee" relationship in this case. These claims allege that Defendants illegally retaliated against Plaintiffs for complaining about various decisions and policies at Mercy by terminating the MDA. "Defendants terminated Dr. Sairam's medical directorship with Mercy and otherwise penalized Plaintiffs . . ." (SAC, 16:12-13, and 17:3-5.) It cannot be stated any clearer that these causes of action are entirely based on Mercy's termination of the MDA.

In addition, the Third and Fourth Causes of Action are analogous to Calif. Lab. Code §1102.5 (Employee's right to disclose information to government or law enforcement agency; Employer prohibited from retaliation; Civil penalty; Confidential communications). The chapter of the Labor Code in which § 1102.5 is located distinguishes between an "employer" and "managers, officers, agents, and employees," (see Cal. Labor Code § 1104 providing "employer is responsible for the acts of his managers, officers, agents, and employees", and only provides for liability on the part of the "employer.") *Reno v. Baird*, supra, at p. 663 (holding "employer," for purposes of Fair Employment and Housing Act, does not include supervisors); see also *Miklosy*, 44 Cal.4th at 901 n.8 (declining to recognize common law claim for retaliation against supervisor; holding "in a retaliation case, it is the employer's adverse employment action that constitutes the substance of the tort, and the supervisor's action merges with that of the employer").

Defendants submit that it would be absurd to allow a doctor to sue employees of his employer for illegal retaliation when anyone other than a doctor in an employment situation is forbidden from doing so. It only makes sense that B&P code Sections 506 and 2056, which make it illegal to retaliate against a doctor who advocates for patient rights, should follow the same rationale as Labor Code Section 1102.5, which makes it illegal to retaliate against whistleblowers in any other employment situation. Since Labor Code 1102.5 bars legal actions against individual employees, B&P Sections 506 and 2056 must as well.

For these reasons, the Court should grant the motion to dismiss the SAC in its entirety, for failure to state a claim as against Defendant Tsanos.

**D. <u>Leave to Amend Would Be Futile And Should Not Be Granted</u>**

"Although a district court should grant the plaintiff leave to amend if the complaint can possibly be cured by additional factual allegations, [d]ismissal without leave to amend is proper if it is clear that the complaint could not be saved by amendment." *Zixiang Li v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013); see also *Steckman v. Hart Brewing*, 143 F.3d 1293, 1298 (9th Cir. 1998) ("Although there is a general rule that parties are allowed to amend their pleadings, it does not extend to cases in which any amendment would be an exercise in

futility or where the amended complaint would also be subject to dismissal."). A district court's discretion to deny leave to amend is "particularly broad" where the plaintiff has previously amended. *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013).

Here, leave to amend would be futile. Plaintiffs' allegations regarding Defendants' RICO enterprise and scheme to defraud are insufficient to establish a viable claim for relief under RICO. Nor have Plaintiffs suggested how they could cure these defects if they were once again given leave to amend. Plaintiffs have already had one opportunity to amend their complaint and respond to Defendants' RICO-specific arguments - which were previously raised in the first set of Motions to Dismiss. Further specificity will not cure the defects in the SAC and therefore, Defendants request leave to amend be denied.

## III. <u>CONCLUSION</u>

For the reasons set forth above, Defendants request that this Court dismiss the Fifth Cause of Action for RICO violations against both Defendants without leave to amend and that Defendant Tsanos be dismissed from all causes of action in which she is named, without leave to amend.

DATED: December 10, 2021

ERICKSEN ARBUTHNOT

SHARON L. HIGHTOWER
LAURA E. MALKOFSKY
Attorneys for Defendants,
MERCY RETIREMENT AND CARE CENTER and TAMRA MARIE TSANOS

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document was filed with the court and served electronically through the CM-ECF (Electronic Case Filing) system to all counsel of record to those registered to receive a Notice of Electronic Filing for this case on this 10th day of December 2021.

I also caused a true copy of the foregoing document **REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT; [FRCP 12(b)(6)]** to be served in this action upon the person(s) set forth below, by the method indicated.

PERSON(S) SERVED:

**ATTORNEYS FOR PLAINTIFFS:**
Michael A. Gawley
J. Maxwell Cooper
Sydney Ann Ward
KESSENICK, GAMMA & FREE, LLP
1 Post Street, Suite 2500
San Francisco, CA 94104
T: (415) 362-9400
F: (415) 362-9401
mgawley@kgf-lawfirm.com; mcooper@kgf-lawfirm.com;
sward@kgf-lawfirm.com; snguyen@kgf-lawfirm.com

**____ (BY MAIL)** I caused such envelope with postage thereon fully prepaid to be placed in the United States Mail this day in Concord, California. I am "readily familiar" with the firm's practice of collecting and processing mail. It is deposited with the U.S. Postal Service on that same day in the ordinary course of business.

**XX (BY ELECTRONIC MAIL)** I caused said document(s) to be electronically mailed to the person(s) named above at the electronic mail address stated.

Jennifer L. Sharpe
JENNIFER L. SHARPE